**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Borror Property Management, LLC <br> 985 North High Street, Suite 200 <br> Columbus, Ohio 43201 <br><br>         Plaintiff, <br><br>         v. <br><br> Oro Karric North, LLC <br> c/o Statutory Agent <br> Paracorp Incorporated <br> 4568 Mayfield Road, #204 <br> Cleveland, Ohio 44121 <br><br>         and <br><br> Oro Karric South, LLC <br> c/o Statutory Agent <br> Paracorp Incorporated <br> 4568 Mayfield Road, #204 <br> Cleveland, Ohio 44121 <br><br>         and <br><br> Oro Silvertree, LLC <br> c/o Statutory Agent <br> Paracorp Incorporated <br> 4568 Mayfield Road, #204 <br> Cleveland, Ohio 44121 <br><br>         and <br><br> Oro Springburne, LLC <br> c/o Statutory Agent <br> Paracorp Incorporated <br> 4568 Mayfield Road, #204 <br> Cleveland, Ohio 44121 <br><br>         Defendants. | Case No. _____ <br><br><br><br><br><br> Judge _____ <br><br><br><br><br><br><br><br><br><br> **JURY DEMAND ENDORSED HEREON** |

## COMPLAINT

For its Complaint against Defendants Oro Karric North, LLC, Oro Karric South, LLC, Oro Silvertree, LLC, and Oro Springburne, LLC, Plaintiff Borror Property Management, LLC hereby alleges as follows:

### Parties

1. Plaintiff Borror Property Management LLC ("Plaintiff" or "Borror") is an Ohio Limited Liability Company with its principal place of business in Columbus, Ohio. Borror has two members, Doug Borror and Lori Steiner. Borror's members are all citizens of the state of Ohio.

2. Defendant Oro Karric North, LLC ("Karric North") is a Delaware Limited Liability Company incorporated under the laws of the state of Delaware. Based upon information and belief, none of Karric North's members or submembers are Ohio citizens.

3. Defendant Oro Karric South, LLC ("Karric South") is a Delaware Limited Liability Company incorporated under the laws of the state of Delaware. Based upon information and belief, none of Karric South's members or submembers are Ohio citizens.

4. Defendant Oro Silvertree, LLC ("Silvertree") is a Delaware Limited Liability Company incorporated under the laws of the state of Delaware. Based upon information and belief, none of Silvertree's members or submembers are Ohio citizens.

5. Defendant Oro Springburne, LLC ("Springburne") is a Delaware Limited Liability Company incorporated under the laws of the state of Delaware. Based upon information and belief, none of Springburne's members or submembers are Ohio citizens.

### Jurisdiction and Venue

6. Subject matter jurisdiction is proper over this action under 28 U.S.C. §1332.

7. Long-arm jurisdiction is proper over this action under Ohio Revised Code §2307.382(A)(1), (2), (3), and (8).

8. Venue is proper under 28 U.S.C. §1391(b)(2).

### FACTS COMMON TO ALL CLAIMS

*The Apartment Complexes Management Agreements*

*Karric North*

9. On June 21, 2018, Karric North purchased an apartment complex located at 3970 Brelsford Lane in Dublin, Ohio (hereafter the "Karric North Apartments").

10. Contemporaneously with that purchase, Karric North executed a contract (the "Karric North Property Management Agreement") with Borror. A true and accurate copy of the contract is attached hereto as Exhibit A.

11. Under the terms of the Karric North Property Management Agreement, Karric North engaged Borror as its sole and exclusive property manager to lease and manage the Karric North Apartments. Exhibit A at §1.1.

12. The term of the Karric North Property Management Agreement was to last through June 2023. Exhibit A at §1.3.

13. For its services, Borror was to be paid 2.25% of the total monthly gross receipts until June 30, 2019, and 2% of the total monthly gross receipts from July 1, 2019 through June 2023. Exhibit A at §15.1 and §15.2. Payment is due on the first day of the next succeeding month for the monthly gross receipts of the prior month. *Id.*

14. Any sum due Borror under any provision of the Karric North Property Management Agreement that is not paid within 30 days after such sum is due bears interest at 12% per year or the maximum rate permitted by law, whichever is less. Exhibit A at §15.6.

15. The Karric North Property Management Agreement also provides that Karric North should indemnify and hold Borror harmless from any action arising from Borror's management of the Karric North apartments. Exhibit A at §11.1.

### *Karric South*

16. On June 21, 2018, Karric South purchased an apartment complex located at 5830 Shannon Place Lane in Dublin, Ohio (hereafter the "Karric South Apartments").

17. Contemporaneously with that purchase, Karric South executed a contract (the "Karric South Property Management Agreement") with Borror. A true and accurate copy of the contract is attached hereto as Exhibit B.

18. Under the terms of the Karric South Property Management Agreement, Karric South engaged Borror as its sole and exclusive property manager to lease and manage the Karric South Apartments. Exhibit B at §1.1.

19. The term of the Karric South Property Management Agreement was to last through June 2023. Exhibit B at §1.3.

20. For its services, Borror was to be paid 2.25% of the total monthly gross receipts until June 30, 2019, and 2% of the total monthly gross receipts from July 1, 2019 through June 2023. Exhibit B at §15.1 and §15.2. Payment is due on the first day of the next succeeding month for the monthly gross receipts of the prior month. *Id.*

21. Any sum due Borror under any provision of the Karric South Property Management Agreement that is not paid within 30 days after such sum is due bears interest at 12% per year or the maximum rate permitted by law, whichever is less. Exhibit B at §15.6.

22. The Karric South Property Management Agreement also provides that Karric North should indemnify and hold Borror harmless from any action arising from Borror's management of the Karric South Apartments. Exhibit B at §11.1.

### *Silvertree*

23. On June 21, 2018, Silvertree purchased an apartment complex located at 5350 Silverthorne Road in Westerville, Ohio (hereafter the "Silvertree Apartments").

24. Contemporaneously with that purchase, Silvertree executed a contract (the "Silvertree Property Management Agreement") with Borror. A true and accurate copy of the contract is attached hereto as Exhibit C.

25. Under the terms of the Silvertree Property Management Agreement, Silvertree engaged Borror as its sole and exclusive property manager to lease and manage the Silvertree Apartments. Exhibit C at §1.1.

26. The term of the Silvertree Property Management Agreement was to last through June 2023. Exhibit C at §1.3.

27. For its services, Borror was to be paid 2.25% of the total monthly gross receipts until June 30, 2019, and 2% of the total monthly gross receipts from July 1, 2019 through June 2023. Exhibit C at §15.1 and §15.2. Payment is due on the first day of the next succeeding month for the monthly gross receipts of the prior month. *Id.*

28. Any sum due Borror under any provision of the Silvertree Property Management Agreement that is not paid within 30 days after such sum is due, shall bear interest at 12% per year or the maximum rate permitted by law, whichever is less. Exhibit C at §15.6.

29. The Silvertree Property Management Agreement also provides that Silvertree should indemnify and hold Borror harmless from any action arising from Borror's management of the Silvertree Apartments. Exhibit C at §11.1.

### *Springburne*

30. On June 21, 2018, Springburne purchased an apartment complex located at 300 Springboro Lane in Columbus, Ohio (hereafter the "Springburne Apartments").

31. Contemporaneously with that purchase, Springburne executed a contract (the "Springburne Property Management Agreement") with Borror. A true and accurate copy of the contract is attached hereto as Exhibit D.

32. Under the terms of the Springburne Property Management Agreement, Springburne engaged Borror as its sole and exclusive property manager to lease and manage the Springburne Apartments. Exhibit D at §1.1.

33. The term of the Springburne Property Management Agreement was to last through June 2023. Exhibit D at §1.3.

34. For its services, Borror was to be paid 2.25% of the total monthly gross receipts until June 30, 2019 and 2% of the total monthly gross receipts from July 1, 2019 through June 2023. Exhibit D at §15.1 and §15.2. Payment is due on the first day of the next succeeding month for the monthly gross receipts of the prior month. *Id.*

35. Any sum due Borror under any provision of the Springburne Property Management Agreement that is not paid within 30 days after such sum is due, shall bear interest at 12% per year or the maximum rate permitted by law, whichever is less. Exhibit D at §15.6.

36. The Springburne Property Management Agreement also provides that Springburne should indemnify and hold Borror harmless from any action arising from Borror's management of the Springburne Apartments. Exhibit D at §11.1.

37. The Karric North Property Management Agreement, the Karric South Property Management Agreement, the Silvertree Property Management Agreement, and the Springburne Property Management Agreement shall collectively be referred to as the "Property Management Agreements."

38. The Karric North Apartments, the Karric South Apartments, the Silvertree Apartments, and the Springburne Apartments shall collectively be referred to as "the Apartment Complexes."

39. Karric North, Karric South, Silvertree, and Springburne shall collectively be referred to as the "Owners."

*The Construction Dispute*

40. In June 2018, Oro Capital Advisers, LLC ("Oro") and Borror Construction Company ("Borror Construction") executed an agreement (the "Construction Agreement") regarding the renovation and construction of various apartment complexes.

41. In the early summer of 2019, Brad Mindlin, Oro's managing partner, Lori Steiner, Borror's President and Chief Operating Officer, and Tom Garske, Borror's Construction President, began discussing issues involving the Construction Agreement.

42. During a July 15, 2019 telephone conference between Mindlin, Steiner, and Garske, Mindlin raised the issue of potentially terminating the Construction Agreement and the Property Management Agreements. During that same call, Steiner informed Mindlin that the

Property Management Agreements had a five year term and could not be terminated absent cause, which had not been provided.

43. On July 17, 2019, Steiner and Mindlin had a follow-up telephone conference in which Steiner reiterated to Mindlin that the Property Management Agreements could not be terminated absent cause, which had not been provided.

44. In late July 2019, Mindlin informed Steiner that he was terminating the Construction Agreement and the Property Management Agreements on behalf of the Owners. Despite believing that Mindlin had no legitimate basis to terminate the Construction Agreement and the Property Management Agreements, Mindlin, Garske, and Steiner began discussing the timing of Borror and Borror Construction vacating the Apartment Complexes.

45. On August 6, 2019, Borror notified the various tenants of the Apartment Complexes that it would no longer manage the Apartment Complexes effective August 9, 2019. That same day, Mindlin notified Steiner that the Owners were terminating all of the Property Management Agreements immediately.

46. On September 24, 2019, Owners first provided notice under the Property Management Agreements to Borror that it believed Borror breached all of the Property Management Agreements by falsely claiming that Borror committed intentional and negligent tortious acts. Owners' "notice" was simply a lawyer created backfill for Owners' prior breach of the Property Management Agreements by purportedly terminating the Property Management Agreements early, without cause, and without notice.

47. As a direct and proximate result of Owners purportedly terminating the Property Management Agreements early, without cause, and without notice, Borror has suffered damages in excess of $75,000.

<u>FIRST CAUSE OF ACTION-BREACH OF CONTRACT</u>
(Karric North)

48. Borror repeats and reiterates each and every allegation contained in paragraphs 1 through 47 above.

49. There was a contract between Borror and Karric North regarding the management of the Karric North Apartments.

50. Borror fully performed all of its contractual obligations or its contractual obligations under the Karric North Property Management Agreement have been waived.

51. Karric North breached the Karric North Property Management Agreement by, among other things: (1) purportedly terminating the Karric North Property Management Agreement early, without notice, and without cause, (2) failing to pay Borror 2% of the monthly gross receipts for August 2019 through June 2023; and (3) by failing to indemnify Borror for its attorney fees, costs, and expenses.

52. As a direct and proximate result of Karric North's various breaches of the Karric North Property Management Agreement, Borror has been damaged in excess of $75,000.

<u>SECOND CAUSE OF ACTION-BREACH OF CONTRACT</u>
(Karric South)

53. Borror repeats and reiterates each and every allegation contained in paragraphs 1 through 52 above.

54. There was a contract between Borror and Karric South regarding the management of the Karric South Apartments.

55. Borror fully performed all of its contractual obligations or its contractual obligations under the Karric South Property Management Agreement have been waived.

56. Karric South breached the Karric South Property Management Agreement by, among other things: (1) purportedly terminating the Karric South Property Management Agreement early, without notice, and without cause; (2) failing to pay Borror 2% of the monthly gross receipts for August 2019 through June 2023; and (3) by failing to indemnify Borror for its attorney fees, costs, and expenses.

57. As a direct and proximate result of Karric South's various breaches of the Karric South Property Management Agreement, Borror has been damaged in excess of $75,000.

### THIRD CAUSE OF ACTION-BREACH OF CONTRACT
(Silvertree)

58. Borror repeats and reiterates each and every allegation contained in paragraphs 1 through 57 above.

59. There was a contract between Borror and Silvertree regarding the management of the Silvertree Apartments.

60. Borror fully performed all of its contractual obligations or its contractual obligations under the Silvertree Property Management Agreement have been waived.

61. Silvertree breached the Silvertree Property Management Agreement by, among other things: (1) purportedly terminating the Silvertree Property Management Agreement early, without notice, and without cause; (2) failing to pay Borror 2% of the monthly gross receipts for August 2019 through June 2023; and (3) by failing to indemnify Borror for its attorney fees, costs, and expenses.

62. As a direct and proximate result of Silvertree's various breaches of the Silvertree Property Management Agreement, Borror has been damaged in excess of $75,000.

## FOURTH CAUSE OF ACTION-BREACH OF CONTRACT
### (Springburne)

63. Borror repeats and reiterates each and every allegation contained in paragraphs 1 through 62 above.

64. There was a contract between Borror and Springburne regarding the management of the Springburne Apartments.

65. Borror fully performed all of its contractual obligations or its contractual obligations under the Springburne Property Management Agreement have been waived.

66. Springburne breached the Springburne Property Management Agreement by, among other things: (1) purportedly terminating the Springburne Property Management Agreement early, without notice, and without cause; (2) failing to pay Borror 2% of the monthly gross receipts for August 2019 through June 2023; and (3) and by failing to indemnify Borror for its attorney fees, costs, and expenses.

67. As a direct and proximate result of Springburne's various breaches of the Springburne Property Management Agreement, Borror has been damaged in excess of $75,000.

**WHEREFORE**, Plaintiff Borror Property Management LLC demands judgment against Defendants Oro Karric North, LLC, Oro Karric South, LLC, Oro Silvertree, LLC, and Oro Springburne, LLC as follows:

1. Compensatory damages in excess of $75,000;
2. Plaintiff's costs, attorneys' fees, and expenses;
3. Pre-judgment interest and post-judgment interest on all monetary amounts awarded; and
4. Any and all other costs, expenses, or relief, legal or equitable, that this Court may deem just and proper.

Respectfully submitted,

*/s/ James E. Arnold*
James E. Arnold (0037712)
 *Trial Counsel*
Damion M. Clifford (0077777)

**JAMES E. ARNOLD & ASSOCIATES, LPA**
115 W. Main Street, 4th Floor
Columbus, Ohio 43215
Telephone (614) 460-1600
Facsimile (614) 469-1093
Email jarnold@arnlaw.com
 dclifford@arnlaw.com

*Counsel for Plaintiff Borror Property Management, LLC*

# JURY DEMAND

Plaintiff hereby demands a trial by jury on all counts of its Complaint so triable.

*/s/ James E. Arnold*
James E. Arnold