IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BORROR PROPERTY MANAGEMENT, LLC | : | Case No.: 2:19-CV-04375 |
| Plaintiff, | : | Judge Algenon L. Marbley |
| v. | : | Magistrate Judge Elizabeth Preston Deavers |
| ORO KARRIC NORTH, LLC, ET AL. | : | |
| Defendants. | : | |

**MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

Defendants, Oro Karric North, LLC ("Karric North"), Oro Karric South, LLC ("Karric South"), Oro Silvertree, LLC ("Silvertree"), and Oro Springburne, LLC ("Springburne") (collectively referred to herein as "Defendants"), move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and to the extent applicable, Ohio Revised Code § 2711, *et seq.*, for an order staying this litigation and compelling binding arbitration as agreed to in the applicable written agreements between the Defendants and Plaintiff, Borror Properties Management, LLC ("Plaintiff").[1]

A.  **BACKGROUND**

Defendants each entered into a separate written agreement with Plaintiff, and DSM Group, Inc. (not named as a party), whereby Plaintiff agreed, among other things,

---

[1] To the best of Defendants' knowledge, Plaintiff's correct legal name, as registered with the office of the Ohio Secretary of State and as stated in the applicable agreements with Defendants, is Borror Properties Management, LLC, although Plaintiff has filed the case as Borror Property Management, LLC.

13751232 _1

to manage residential rental properties for each of the respective Defendants (the "Property Management Agreements"). True and accurate copies of the Property Management Agreements are attached hereto and incorporated herein as Exhibits 1-4 (Exhibit 1 – Karric South Property Management Agreement, Exhibit 2 – Karric North Property Management Agreement, Exhibit 3 – Silvertree Property Management Agreement, and Exhibit 4 – Springburne Property Management Agreement). Each of the Property Management Agreements contains identical alternative dispute resolution procedures that ultimately culminate with binding arbitration with the American Arbitration Association. *See* Exhibits 1-4 at § 24.2.[2]

Each of the Property Management Agreements provides that "If either party shall notify the other party that any matter is to be determined by arbitration, the parties **shall** first try to resolve any dispute or controversy arising out of this Agreement." *See* Exhibits 1-4 at § 24.2 (emphasis added). If the parties cannot resolve the matter within thirty days, then the parties are required to appoint arbitrators to resolve it, and regardless of whether two or three arbitrators are eventually appointed, the Property Management Agreements provide that the arbitration "**shall** be binding and conclusive upon the parties."[3] *See id*. (emphasis added).

---

[2] The language of each of the Property Management Agreements with respect to the dispute resolution procedure is identical. See Exhibits 1-4 at § 24.2.

[3] Section 24.2 of each of the Property Management Agreements, states:

> If either party shall notify the other that any matter is to be determined by arbitration, the parties shall first try to resolve any dispute or controversy arising out of this Agreement. If there is no resolution within thirty (30) days, then (a) within fifteen (15) calendar days thereafter, each party shall appoint an arbitrator by notice to the other

2

13751232 _1

Despite the binding arbitration provisions in each of the Property Management Agreements, Plaintiff ignored such provisions and filed this case asserting four claims for breaches of the Property Management Agreements without first proceeding with binding arbitration. *See* the Complaint (Doc. 1).[4]

After Defendants' counsel received a courtesy copy of the Complaint (Doc. 1), Defendants notified Plaintiff on October 8, 2019 that the matters arising out of the Property Management Agreements, including, but not limited to, those matters set forth in the Complaint (Doc. 1), would need to be resolved through binding arbitration.[5] *See* October 8, 2019 Email attached hereto and incorporated herein as Exhibit 5.  Plaintiff's

---

party; (b) if either party shall fail to make such appointment within the prescribed time, then the arbitrator appointed by the party not so failing shall appoint, on behalf of the party so failing, one other arbitrator; (c) the arbitrators so appointed shall meet within ten (10) business days and shall, if possible, determine such matter within thirty (30) days after the second arbitrator is appointed, and **their decision shall be binding and conclusive on the parties**; (d) if the two arbitrators fail to determine said within the 30-day period, they shall appoint a third arbitrator, and in the event of their failure to agree upon such third arbitrator within ten (10) days after the time aforesaid, either party may apply to any court of competent jurisdiction for the appointment of such third arbitrator, and the other party shall not raise question as to the court's power and jurisdiction; and (e) the determination of any two of the three arbitrators shall be given within thirty (30) days (or as soon as is possible) after the appointment of the third arbitrator **and shall in all cases be binding and conclusive upon the parties**. (See Exhibits 1-4 at § 24.2 (emphasis added)).

[4] In a separate case in the Franklin County Court of Common Pleas styled *Oro Capital Advisors, LLC v. Borror Construction Co., LLC* (Case No. 19-CV-007605), which involves affiliated parties, Borror Management's affiliated construction company, Borror Construction Co., LLC ("Borror Construction"), has, through its same counsel in this case, moved to dismiss or stay the complaint filed by Oro Capital Advisors, LLC ("Oro Capital"), Defendants' affiliate, by claiming that Oro Capital did not follow the alternative dispute resolution procedures set forth in the applicable construction management agreement. It is disingenuous for Borror Management's affiliate to argue in the state court action that the parties should have to follow the agreed-upon dispute resolution procedures in that matter (which are non-binding), but that the parties in this case should not have to follow the agreed-upon arbitration set forth in the Property Management Agreements, which is binding.

[5] On October 24, 2019, Defendants' counsel received a request from Plaintiff's counsel to waive service of the summons.  On October 25, 2019 Defendants' undersigned counsel completed and returned the waivers of service of summons for each of the Defendants to Plaintiff's counsel (Doc. Nos. 4, 5, 6, and 7).

3

13751232 _1

response to the Defendant's October 8, 2019 demand for binding arbitration has been specifically refused and rejected by Plaintiff despite the provisions requiring such in the Property Management Agreements.

Defendants also give notice to Plaintiff, via the filing of this Motion to Stay Proceedings and Compel Arbitration, that Defendants demand that the parties resolve all matters relating to the Property Management Agreements, including the Plaintiff's claims set forth in the Complaint (Doc. 1), through binding arbitration as agreed in the Property Management Agreements. These notices trigger the binding arbitration procedures set forth in the Property Management Agreements.

B. **LAW AND ARGUMENT**

Under the applicable Federal Arbitration Act ("FAA"), the claims raised by Plaintiff in its Complaint (Doc. 1) must be stayed and referred to binding arbitration as agreed to by Plaintiff and Defendants under the Property Management Agreements. Even if the FAA did not apply, Ohio's Arbitration Act, Ohio Revised Code § 2711 *et seq.*, also requires binding arbitration.

1. The FAA Requires Binding Arbitration

"The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (citations omitted). The FAA preempts state law regarding arbitration. *See Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005)

(citing *Southland Corp. v. Keating*, 465 U.S. 1, 10-11, (1984)).  If a court determines that the cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete.  See *Rankin v. Ashro, Inc.*, S.D. Ohio, 2:15-cv-453, 2015 WL 1879969 at *1, (April 23, 2015), citing 9 U.S.C. § 3.  It is well-established that any doubts regarding arbitrability should be resolved in favor of arbitration.  *See Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25.

When considering a motion to stay proceedings and compel arbitration under the FAA, a court must determine (1) whether the parties agreed to arbitrate; and (2) whether the claims asserted in the litigation fall within the scope of the contractual arbitration provision.  *See Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Although the FAA preempts state law regarding arbitration, state law governs issues of formation, such as validity, revocability, and enforceability, with respect to the arbitration clause.  See *Rankin v. Ashro, Inc.*, S.D. Ohio, 2:15-cv-453, 2015 WL 1879969 at *1, (April 23, 2015) (citing *Glazer*, 394 F.3d at 451 and *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, (1987)).  "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law."  *See id*. at *2 (quoting *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 377 (6th Cir. 2005)).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or alike defense to arbitrability."  *See id*. at *1 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1 at 24-25).

5

13751232_1

"The party refusing to comply with an arbitration agreement has the burden of proving the claims at issue are unsuitable for arbitration." *See Dreher v. Eskco, Inc.*, S.D. Ohio Nos. 3:08-cv-325 and 3:09-cv-209, 2009 WL 2176060 at *4, (July 21, 2009) (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 659 (6th Cir. 2003) (*en banc*)). "[O]nly an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration from the arbitrators." *See id.* at *6 (quoting *Morrison*, 317 F.3d at 659).

There is no dispute that Plaintiff and each of the respective Defendants voluntarily entered into the Property Management Agreements, and that each agreement contains a mandatory binding arbitration provision titled "DISPUTE RESOLUTION." *See* the Complaint (Doc. 1) at ¶¶ 10, 17, 24, and 31 (alleging that Plaintiff entered into a respective Property Management Agreement with each of the Defendants); and Exhibits 1-4 at § 24.2.

The arbitration provision set forth in the Property Management Agreements is broad in scope, covering "any dispute or controversy arising out of this Agreement [the Property Management Agreements]." More specifically, the arbitration provision states that upon notice from "**either** party" that "any matter is to be determined by arbitration, the parties shall first try to resolve **any dispute or controversy arising out of this Agreement**." *See* Exhibits 1-4 at § 24.2 (emphasis added). If the parties cannot resolve that dispute or controversy voluntarily, the parties must then proceed with a

6

13751232_1

detailed arbitrator selection process to resolve that dispute or controversy through binding arbitration. *See id*.

The phrase "any dispute or controversy arising out of this Agreement" undoubtedly includes claims for a breach of contract of the Property Management Agreements as such claims constitute a dispute or controversy arising out of the Property Management Agreements. Such a broadly defined arbitration provision is presumed to cover all claims related to the applicable agreement, unless there is some express language to the contrary. *See Dreher v. Eskco, Inc.*, S.D. Ohio Nos. 3:08-cv-325 and 3:09-cv-209, 2009 WL 2176060 at *6 (July 21, 2009) (quoting *Morrison*, 317 F.3d at 659); *see also Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657 at ¶ 18 ("An arbitration clause that contains the phrase 'any claim or controversy arising out of or relating to the agreement' is considered 'the paradigm of a broad [arbitration] clause."). There is no express language in the Property Management Agreements carving out any specific types of claims from the broad arbitration provision, and certainly nothing that excludes Plaintiff's breach of contract claims from arbitration.

Finally, although the "DISPUTE RESOLUTION" section discusses binding arbitration in great detail, there is no mention of the parties' ability to pursue any alternative dispute resolution process, such as litigation. *See* Exhibits 1-4 at § 24.2. The lack of such language further supports Defendants' position that if either party notifies

the other that any matter should be resolved through arbitration, binding arbitration is required.

Accordingly, the only four claims asserted by Plaintiff—all for breach of contract of the Property Management Agreements—are all subject to and must be referred to arbitration pursuant to the FAA and in accordance with the procedures set forth in Section 24.2 of each of the Property Management Agreements.

### 2. Ohio's Arbitration Act Requires Binding Arbitration

Although the FAA preempts Ohio law relating to the arbitration provision in the Property Management Agreements, Ohio's Arbitration Act, which is consistent with the FAA, also requires binding arbitration of the breach of contract claims asserted by Plaintiff. *See Morgan v. UMH Properties*, N.D. Ohio No. 1:18 CV 948, 2018 WL 3647203 at *2 (August 1, 2018)("The Ohio Arbitration Act is consistent with the FAA.").

It is well settled that Ohio encourages arbitration to settle disputes. *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 500, (citing *Kelm v. Kelm* (1993), 68 Ohio St.3d 26, 27). When an action brought before a court involves a contract dispute and the contract at issue contains an arbitration clause, Ohio Revised Code § 2711.02 obligates a court to stay proceedings pending arbitration of matters covered by an arbitration clause. Ohio Revised Code § 2711.02 states in relevant part:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, **shall** on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with

8

13751232_1

> the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

*See* R.C. § 2711.02 (emphasis added).

Accordingly, pursuant to Ohio Revised Code § 2711.02, a court is required, upon application of one of the parties, to stay an action if the matter involved falls under an arbitration agreement. Further, under Ohio Revised Code § 2711.03, a party to an arbitration agreement may seek an order directing the other party to proceed to arbitration. *ABM Farms*, at 500. As Ohio law favors arbitration, a clause providing for arbitration should be deemed effective unless it is insusceptible to an interpretation that covers the dispute in question, taking into consideration that any ambiguities in the contract itself should be resolved in favor of arbitration. *Gaffney v. Powell*, 107 Ohio App.3d 315, 321, 668 N.E.2d 951, 954 (1st Dist. 1995).

As is set forth above in Section (B)(1) of this Motion, each of the Property Management Agreements contains a dispute resolution provision whereby the parties agreed to resolve any dispute or controversy arising out of the Property Management Agreements by binding arbitration. *See* Exhibits 1-4 at § 24.2. All the breach of contract claims filed by Plaintiff in this case unequivocally arise out of the Project Management Agreements—they involve allegations that Defendants breached the Project Management Agreements. Accordingly, under Ohio's Arbitration Act, all of Plaintiff's claims in the Complaint (Doc. 1) must be referred to arbitration in accordance with the arbitration procedures in the Property Management Agreements.

C.     **CONCLUSION**

Both the Federal Arbitration Act and Ohio's Arbitration Act require this Court to refer matters to binding arbitration when the parties have agreed to arbitrate the disputes raised in litigation.  Plaintiff and Defendants agreed to arbitrate any disputes or controversies arising out of the Property Management Agreements, and that includes the four breach of contract claims asserted by Plaintiff against Defendants.  Defendants request, therefore, that this Court stay this case until binding arbitration is completed and order the parties to proceed with arbitration in accordance with the Property Management Agreements.

Respectfully submitted,

/s/ *Lucas K. Palmer*
David M. Scott (0068110)
Lucas K. Palmer (0080838)
**BRENNAN, MANNA & DIAMOND, LLC**
250 S. Civic Center Dr., Ste. 300
Columbus, Ohio 43215
Telephone:    (614) 246-7500
E-mail:        dscott@bmdllc.com
                    lkpalmer@bmdllc.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of October, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Lucas K. Palmer
*Attorney for Defendants*

4840-3772-6379, v. 1